## CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed January 18, 1893.

WALTER GEBHARDT ET. AL.

VS.

VERONICA GEBHARDT.

*C. Dodd McFarland* for plaintiffs.

*L. P. & P. C. Hennighausen* for defendant.

WICKES, J.—

Conceding that the weight of authority fairly establishes the principle, as contended on the argument that a widow to whom property is left by the will of her husband in lieu of dower, may, with a full knowledge of her rights and a full knowledge of all the facts concerning the properties, elect to take under the will, so as to deprive herself of the power to renounce within the statutory period: still the election so exercised, in order to bind her, must be so clear and unequivocal, and her acts of ownership so unmistakable, that no doubt remains as to her intention in the matter. Therefore each case must depend upon its own circumstances.

If with a clear knowledge of her rights and of the properties and their value, she formally accepts and uses the property, bequeathed, or does acts inconsistent with her right of dower, such as selling or mortgaging the realty, or so disposing of the personalty, as to involve and impair the rights of third persons, she will estop herself from afterwards making her election. I know of no case in this State, which is at variance with the current of authority on this subject elsewhere.

The period within which she may renounce, extended, as it has been from time to time, until six months is now allotted her, is intended to enable her to make an intelligent election, but it scarcely means, that having made such election, and acted upon it, that she can change her mind at any time she may see proper, simply because the statutory period has not elapsed.

Mrs. Veronica Gebhardt, the widow in this case had been married to her husband, the testator, for a period of twenty years. By a former marriage, he had four children, and the testimony shows, that the domestic relations of husband and wife were affectionate and kind, and that towards her step-children she occupied a position entirely free from any suspicion or want of confidence on their part. The husband seems to have had perfect faith in her, for Warren Gebhardt, his only son, testifies "that she was the only person in whom he put implicit confidence."

When he made his will, some years before his death, its provisions were talked over between them in the presence of the Rev. Mr. Hennighausen, their friend and pastor, who prepared it as he was requested. It was deemed prudent and best to provide for her in lieu of her dower, and the will was so drawn, she endorsing on it her concurrence in its provisions "although fully knowing" as she says, "that I can at any time claim such dowry and thirds." The testator appointed his son and a son-in-law, executors and letters testamentary were taken out by them.

Two days after his death, in April last, the will was read by the clergyman who drew it, in the presence of the widow and children, and she said she was satisfied with it.

She continued to live on in the house she had occupied with her husband

since 1880, and continued to retain in the same house, where they were at the time of her husband's death, the furniture and clothing which he bequeathed to her. She also retained the bank book, in which was entered a small sum of money in their joint names, which the will provided should be hers. She collected the rents of the houses she was to have during her life, signing the receipts as "administrator" in every instance except one.

In order to secure more rent, for the "estate" she has testified, she moved out of the front building, in which she and her husband had lived, into two rooms in the back building; and in order to make more room, she stored part of the furniture with friends, who charged her nothing, and sold an icebox, appraised at two dollars, for three, with the understanding that she could get it back whenever she wanted it.

She was notified by one of the executors when this furniture was moved that she could not sell it, as the estate was still in the Orphans' Court.

The testator intended to make ample provision for her comfort, and supposed he had done so. Mr. Hennighausen testifies to this effect, and he says "that the wife was willing to accede to the wishes of her husband, and with the understanding that her wants would be fully provided for, she was perfectly satisfied thus to agree with her husband as she desired to live at peace with the children." And again the same witness says "she was willing to sign the paper (meaning the endorsement on the will) to show good will all around, with the understanding that a sufficient provision had been made for her future life."

The testimony further shows that at the time the will was executed, the bakery conducted in the house in which they lived was doing a large business, later on the business fell off, until the son, to whom the father seems to have given it, moved it away shortly before the testator died, thus leaving vacant part of the premises in which she lived. Mrs. Gebhardt has testified that her husband intended to alter his will in view of the changed condition of his property, and make better provision for her, but died before he had an opportunity to do so.

The facts briefly summarized. then are as follows:

A married woman who "desires to follow the last wishes of her husband" and live in "good will with her step children" consents to accept the provision made for her in her husband's will in lieu of dower condition that it is sufficient for her comfort and well knowing that she can claim her "dowry or thirds" at any time.

The husband dies, and two days afterwards when the will is read she assents to it and says she is satisfied. She continues to live in the house where her husband died and retains the furniture and clothes in her possession. She is an executrix and collects rent for the rooms she rents out and for other property which she was entitled under the will to enjoy during her life. She receipts as "administratrix" except in a single instance, and that was immediately after her husband's death. The rents collected were small in amount and she used them to buy mourning for herself and to live on. She was never asked for the money by her co-executors, who seem to have taken charge of the balance of the estate. She sold a single article for more than its appraised value, and can get it back at any time. Some of the furniture she stored, the balance she uses. Finding the provisions made for her in her husband's will not sufficient for her comfort, being old and weak as she says, after four months of experience she formerly renounces and desires to take her dower interest in the estate. She has not impaired the estate; she can return the only article she sold, and the few dollars she collected and used to supply her necessary and proper wants.

Upon these facts, and they are undisputed, I can conceive of no good reason in law, or equity, or morals, why she should not be permitted to do so.

The case referred to by the learned counsel for plaintiffs, Davison vs. Davison, 15 N. J. 240 (3 Green, ch.) which it was argued ruled this case, does not, in my judgment, affect the question involved at all. In the New Jersey case there was a formal delivery by the administrator of the property given by the will, and a formal acceptance by the widow. She

promised to execute a release, but put it off from time to time, and the question was whether she *could* so accept by parol as to bind herself. The acceptance and election were full, complete and undisputed, and the Court held that the formal release was not necessary, but the parol election was sufficient. In the case before us, however, the difficulty is not with the law, but with the proof. The bill must be dismissed.